**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF HAWAII**

UNITED STATES OF AMERICA,

Plaintiff,

v.

Civil Action No. 1:26-cv-00476

STATE OF HAWAII and UNIVERSITY OF HAWAII;

Defendants.

---

**COMPLAINT**

---

Plaintiff, the United States of America, by and through its undersigned counsel, brings this civil action for declaratory and injunctive relief, and alleges as follows:

**INTRODUCTION**

1. Federal law prohibits illegal aliens from receiving postsecondary education benefits based on residence within a state if such benefits are denied to U.S. citizens residing in other states. *See* 8 U.S.C. § 1623(a). There are no exceptions. Federal law also requires any State that wishes to extend public benefits to illegal aliens after August 22, 1996, to pass a law "which affirmatively provides for such eligibility." 8 U.S.C. § 1621(d). Yet, illegal aliens have been receiving in-state tuition based on residence in Hawaiʻi for decades. And no Hawaiʻi statute affirmatively makes illegal aliens eligible for financial aid.

2. Hawaii Administrative Rule ("HAR") 20-4-9(g) extends eligibility for in-state tuition, scholarships, and loans to resident illegal aliens that are unavailable to nonresident U.S. citizens. Specifically, HAR 20-4-9(g) provides without meaningful exception that all bona fide resident aliens qualify as residents for tuition purposes.

3. This rule constitutes blatant unequal treatment favoring illegal aliens over U.S. citizens. Worse, such preferential treatment is squarely prohibited and preempted by federal law mandating that "an alien who is not lawfully present in the United States *shall not* be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a) (emphasis added). Accordingly, under the Supremacy Clause of our Nation's Constitution, HAR 20-4-9(g)'s extension of eligibility for postsecondary education benefits to illegal aliens is unconstitutional and must yield to federal law.

4. Courts have long recognized 8 U.S.C. § 1623's express preemptive effect. *See, e.g., Young Conservatives of Tex. Found. v. Smatresk*, 73 F.4th 304, 313 (5th Cir. 2023) (holding that Section 1623 "expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same. No matter what a state says, if a state did not make U.S. citizens eligible, illegal aliens cannot be eligible"); *Equal Access Educ. v. Merten*, 305 F. Supp. 2d 585, 606 (E.D. Va. 2004) (stating that under Section 1623(a), "public post-secondary institutions need not admit illegal aliens at all, but if they do, these aliens cannot receive in-state tuition unless out-of-state United States citizens receive this benefit"); *Foss v. Ariz. Bd. of Regents*, No. 1 CA-CV 18-0781, 2019 WL 5801690, at *8 (Ariz. Ct. App. Nov. 7, 2019) ("Section 1623 is directed at institutional practices, curtailing the authority of educational institutions to grant in-state tuition benefits to undocumented aliens. . . .").

5. Numerous courts have struck down similar in-state tuition laws as unconstitutional based on Section 1623's preemptive effect. *See, e.g.*, *United States v. Kansas*, No. 5:26-CV-04066, 2026 WL 2654069, at *6 (D. Kan. Sept. 9, 2026) (finding Kansas in-state tuition statute "preempted because it confers a postsecondary education benefit on an unlawfully present alien based on a state-defined residency conclusion without making that same benefit generally

available to United States citizens and nationals regardless of their residence"); *United States v. Illinois*, No. 25-CV-1691, 2026 WL 2137256, at *8–11 (S.D. Ill. July 24, 2026) (finding Illinois in-state tuition statutes as applied to illegal aliens expressly preempted by Section 1623(a)); *United States v. Nebraska*, --- F. Supp. 3d ---, No. 8:26-CV-172, 2026 WL 1584862 *27 (D. Neb. June 3, 2026) (holding Nebraska laws were preempted by Section 1623(a) because "they allow aliens unlawfully present in the United States to qualify as 'residents' of Nebraska for the purpose of post-secondary education benefits but deny such benefits to United States citizens of other states'"); *United States v. Oklahoma*, No. 6:25-CV-00265, ECF No. 23 at 1 (E.D. Okla. Aug. 29, 2025) (Order and Final Consent Judgment) (holding that challenged Oklahoma in-state tuition law "as applied to aliens who are not lawfully present in the United States, violates the Supremacy Clause and are unconstitutional and invalid"); *United States v. Texas*, No. 7:25-CV-00055, 2025 WL 1583869, at *1 (N.D. Tex. June 4, 2025) (permanently enjoining Texas defendants from enforcing Texas Education Code §§ 54.051(m) and 54.052(a) because the challenged provisions violated the Supremacy Clause). This Court should do the same.

6. Hawai'i also allows illegal aliens to receive postsecondary education benefits without explicit statutory authorization in violation of 8 U.S.C. § 1621. That, too, is prohibited and preempted by Congress. *See United States v. Kentucky Council on Postsecondary Educ.*, No. 3:25-CV-00028, 2026 WL 880597 (E.D. Ky. Mar. 31, 2026) (holding Kentucky regulation violated 8 U.S.C. § 1621(d) because it was a regulation, not an enacted State law as required by Section 1621(d). Thus, Hawaii's postsecondary education benefits scheme is preempted twice over, and this Court should join the other courts in invalidating such laws.

**JURISDICTION AND VENUE**

7. The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

8. Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b) because: (1) all Defendants reside in this judicial district, and (2) a substantial portion of the events giving rise to this Complaint arose from events occurring within this judicial district.

9. The Court has the authority to provide the relief requested under the Supremacy Clause, U.S. Const. art. VI, cl. 2; 28 U.S.C. §§ 1651, 2201, and 2202; and the Court's inherent equitable powers.

**PARTIES**

10. Plaintiff, the United States of America, regulates immigration under its inherent, constitutional, and statutory authorities. Plaintiff enforces federal immigration laws through its Executive agencies, including the Department of Homeland Security ("DHS") and DHS component agencies, U.S. Immigration and Customs Enforcement, U.S. Citizenship and Immigration Services, and U.S. Customs and Border Protection.

11. Defendant State of Hawaii is a state of the United States.

12. Defendant University of Hawaiʻi ("University"), through the University of Hawaiʻi Board of Regents ("Board"), has authority to formulate policy and exercise control over Hawaiʻi's public postsecondary schools, including setting tuition rates and implementing policies that give benefits to students based on residence in Hawaiʻi. *See* Haw. Const. art. X; Haw. Rev. Stat. Ann. § 304A-402 (West, Westlaw through 2026 Legis. Sess.); *id.* § 26-11.

**FEDERAL LAW**

13. The Constitution empowers Congress to "establish an uniform Rule of Naturalization," U.S. Const. art. I, § 8, cl. 4, and to "regulate Commerce with foreign Nations," U.S. Const. art. I, § 8, cl. 3.

14. The Constitution also vests the President of the United States with "[t]he executive Power," U.S. Const. art. II, § 1, and authorizes the President to "take Care that the Laws be

faithfully executed," U.S. Const. art. II, § 3, which necessarily includes his duty to take care over immigration matters.

15. The United States has inherent, well-established, preeminent, and preemptive authority to regulate immigration matters. This authority derives from its inherent obligations as a sovereign, the Constitution, and numerous acts of Congress. *See, e.g.*, *Fong Yue Ting v. United States*, 149 U.S. 698, 711 (1893) ("The right to exclude or to expel all aliens, or any class of aliens, absolutely or upon certain conditions, in war or in peace, [is] an inherent and inalienable right of every sovereign and independent nation, essential to its safety, its independence, and its welfare . . . ."); *Ping v. United States*, 130 U.S. 581, 603–04 (1889) ("Jurisdiction over its own territory to that extent is an incident of every independent nation. It is a part of its independence. If it could not exclude aliens it would be to that extent subject to the control of another power."); *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950) ("The exclusion of aliens is a fundamental act of sovereignty. The right to do so stems not alone from legislative power but is inherent in the executive power to control the foreign affairs of the nation. When Congress prescribes a procedure concerning the admissibility of aliens, it is not dealing alone with a legislative power. It is implementing an inherent executive power.").

16. Based on its enumerated constitutional and sovereign powers to control and conduct relations with foreign nations, the Federal Government has broad authority to establish immigration laws. *See Fiallo v. Bell*, 430 U.S. 787, 798 (1977) (explaining that matters of immigration concern "policy questions entrusted exclusively to the political branches of our Government," leaving "no judicial authority" for courts "to substitute [their] political judgment for that of the Congress").

17. In 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act ("PRWORA") and the Illegal Immigration Reform and Immigrant

Responsibility Act ("IIRIRA"). *See* PRWORA, Pub. L. No. 104-193, 110 Stat. 2268 (1996); IIRIRA, Pub. L. No. 104-208, Div. C, 110 Stat. 3009-546 (1996). Those Acts sought to encourage self-sufficiency among immigrants, limit their dependence on public assistance, and prevent public benefits from serving as an incentive for illegal immigration. *See id.*; *see also* 8 U.S.C. § 1601(1) ("Self-sufficiency has been a basic principle of United States immigration law since this country's earliest immigration statutes.").

18. Congress declared that "aliens within the Nation's borders [should] not depend on public resources to meet their needs, but rather rely on their own capabilities and the resources of their families, their sponsors, and private organizations." 8 U.S.C. § 1601(2)(A).

19. Congress also emphasized that "the availability of public benefits [should] not constitute an incentive for immigration to the United States." *Id.* § 1601(2)(B).

20. Moreover, Congress determined that "[i]t is a compelling government interest to enact new rules for eligibility and sponsorship agreements in order to assure that aliens be self-reliant in accordance with national immigration policy" and "to remove the incentive for illegal immigration provided by the availability of public benefits." *Id.* § 1601(5)-(6).

21. As relevant here, PRWORA provides: "A State may provide that an alien who is not lawfully present in the United States is eligible for any State or local public benefit for which such alien would otherwise be ineligible . . . only through the enactment of a State law after August 22, 1996, which affirmatively provides for such eligibility." 8 U.S.C. § 1621(d).

22. But even in such cases, a state may not offer in-state tuition ("resident tuition") benefits to illegal aliens present in the United States based on their residence in the state, if those same benefits are denied to American citizens from other states. *See* 8 U.S.C. § 1623(a). IIRIRA included a clear "[l]imitation on eligibility for preferential treatment of aliens not lawfully present on basis of residence for higher education benefits." *Id.*

23. Section 1623(a) provides that:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

*Id.* § 1623(a).

24. Accordingly, under 8 U.S.C. § 1623(a), illegal aliens present in the United States are not eligible for postsecondary education benefits based on state residency unless those same benefits are also offered to all American citizens, regardless of their state of residence.

25. On February 19, 2025, President Trump issued Executive Order 14218, *Ending Taxpayer Subsidization of Open Borders*,[1] ordering federal departments and agencies to "ensure, to the maximum extent permitted by law, that no taxpayer-funded benefits go to unqualified aliens." *Id.* § 2(a).

26. On April 28, 2025, President Trump issued Executive Order 14287, *Protecting American Communities From Criminal Aliens*,[2] directing relevant officials to ensure the "[e]qual [t]reatment of Americans" and to "take appropriate action to stop the enforcement of State and local laws, regulations, policies, and practices favoring aliens over any groups of American citizens that are unlawful, preempted by federal law, or otherwise unenforceable, including State laws that provide in-State higher education tuition to aliens but not to out-of-State American citizens." *Id.* § 5.

[1] Executive Order, *Ending Taxpayer Subsidization of Open Borders*, 90 Fed. Reg. 10581 (Feb. 19, 2025), https://perma.cc/V5KX-DX6Q.

[2] Executive Order, *Protecting American Communities From Criminal Aliens*, 90 Fed. Reg. 18761 (Apr. 28, 2025), https://perma.cc/83KY-N8Q9.

27. These Executive Orders emphasize that state governments must not confer greater benefits to illegal aliens present in our Nation than to U.S. citizens. They also reflect Congress's end—expressed in multiple provisions of the Immigration and Nationality Act—to reduce incentives for illegal immigration by limiting access to certain public benefits intended for U.S. citizens.

## HAWAI‘I LAW

28. All public colleges in Hawai‘i are part of the University of Hawaii System ("University").[3] A board of regents ("Board") with rulemaking authority governs the University. *See* Haw. Rev. Stat. § 304A-105 (2025). The Board exercises its authority through formal administrative rules, Board of Regents Policies, and Executive Policies.[4]

29. The Board manages postsecondary education benefits for University students. The Board may "charge resident and nonresident tuition fees." Haw. Rev. Stat. Ann. § 304A-401 (West 2017). The Board may "grant, modify, or suspend scholarship and assistance." *Id.* § 304A-501. The Board determines eligibility for student loans underwritten by the State of Hawai‘i. *See id.* § 304A-601. And the Board has made these benefits contingent on residency in Hawai‘i.

30. Section 304A-402 of the *Hawai‘i Revised Statutes* tasks the Board with "defining residence for tuition purposes:

> The board of regents shall adopt the necessary rules defining residence for tuition purposes herein; provided that the basic rule shall be that a student shall qualify for the resident tuition fee only if:
>
> (1) Both the following criteria are met:

---

[3] *Institutional Profile*, Univ. of Haw. Off. of the Vice President for Rsch. & Innovation, https://research.hawaii.edu/rsc/institutional-profile/ [https://perma.cc/JM3G-MS72] (last visited Aug. 26, 2026).

[4] Univ. of Haw. Bd. of Regents, *The Board of Regents General Overview* 4 (2024), https://www.hawaii.edu/offices/bor/guide/docs/Board_of_Regents_General_Overview_with_Appendix.pdf [https://perma.cc/67YM-GNNE].

> (A) The adult student, or in the case of a minor student, the student's parents or guardians, has or have been a bona fide resident of this State for at least twelve consecutive months next preceding the student's first day of officially scheduled instruction for any semester or term in which the student is enrolling at the particular college or campus; and
>
> (B) The adult or minor student has not been claimed as a dependent for tax purposes for at least twelve months next preceding the student's first day of officially scheduled instruction for any semester or term in which the student is enrolling at the particular college or campus by the student's parents or guardians who are nonresidents of the State; provided that this provision shall not apply in cases where the parent claiming the student as a dependent is entitled to do so under a child support order or agreement issued or entered into in conjunction with a divorce proceeding or legal separation agreement and the other parent and the student meet the criteria set forth in subparagraph (A); or
>
> (2) The adult or minor student:
>
> (A) Graduated from a high school in the State within two years preceding the student's first day of officially scheduled instruction for any semester or term in which the student is enrolling at the particular college or campus; and
>
> (B) Will enroll in an undergraduate degree program.

*Id.* § 304A-402 (West, Westlaw through 2026 Legis. Sess.).

31. The Board has carried out this directive through detailed regulations governing whether and when a student is a Hawai'i resident, and how he can prove it. *See* Haw. Admin. R. 20-4-1 to 20-4-17 (LexisNexis 2026).

32. Hawaii Administrative Rule ("HAR") 20-4-9(g) addresses aliens: "An alien may establish residence to the extent permitted by the Immigration & Nationality Act."[5] *Id.* r. 20-4-9(g). The Immigration and Nationality Act does not make any alien ineligible to establish residency as such in the United States or any State. Under the INA, "[t]he term 'residence' means

[5] Before 2022, HAR 20-4-9(g) stated, "An alien may establish residence *unless prohibited by* the Immigration & Nationality Act *from establishing domicile in the U.S.*" Memorandum from Kalbert K. Young, Vice President for Budget & Finance/CFO, Univ. of Haw., to Randolph G. Moore, Chair, Univ. of Haw. Bd. of Regents, Ex. 1, at 4-11 (Aug. 11, 2022) (emphasis added) (available at https://perma.cc/UN8T-AJUG).

the place of general abode," and "the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent." 8 U.S.C. § 1101(33). There is no exception for illegal aliens.

33. HAR 20-4-9(g) permits illegal aliens to receive postsecondary education benefits in Hawai‘i.

**I. Hawai‘i makes illegal aliens eligible for in-state tuition based on residency while denying nonresident U.S. citizens the same without explicit statutory authorization.**

34. The Board charges residents less than nonresidents for tuition at all ten University schools: (1) UH Mānoa; (2) UH Hilo; (3) UH West O‘ahu; (4) UH Maui College; (5) Honolulu Community College; (6) Kapi‘olani Community College; (7) Leeward Community College; (8) Windward Community College; (9) Kaua‘i Community College; and (10) Hawai‘i Community College.[6]

35. For example, for the 2026-27 academic year, UH Mānoa charges full-time resident students $5,660 for a semester of undergraduate courses and nonresidents $16,896. Univ. of Haw., *supra* note 6, at 1. At UH Hilo, the rates are $3,816 and $10,296 for residents and nonresidents, respectively. *Id*.

36. The tuition rate for illegal aliens in Hawai‘i who satisfy HAR 20-4-9(g)'s criteria is the same tuition rate as other Hawai‘i residents. Conversely, a U.S. citizen who is not eligible for in-state tuition due to residency requirements is required to pay higher, nonresident tuition.

37. No statute passed after August 22, 1996, affirmatively makes illegal aliens eligible for in-state tuition.

---

[6] *See* Univ. of Haw., Executive Policy No. 6.201, Attach. 1 (eff. Dec. 2024), https://hawaii.edu/policy/docs/temp/3.22_Tuition_Memo_Attachment_2022-23_to_2026-27_revised_10.10.23_and_10.18.24_02.19.25_rev_07.06.26_clean.pdf [https://perma.cc/6M3M-EYAF].

## II. Hawai‘i makes illegal aliens eligible for other benefits based on residency while denying nonresident U.S. citizens the same without explicit statutory authorization.

38. The Hawai‘i legislature has granted the Board broad authority to grant tuition waivers, *i.e.*, to "[w]aive entirely or reduce the tuition fee or any of the other fees for students, resident or nonresident." Haw. Rev. Stat. Ann. § 304A-502(4) (West 2017).

39. One such waiver program, the Regents and Presidential Scholars Program, is only available to "bona fide residents of Hawai‘i."[7]

40. The legislature has also created several scholarships such as the community college promise program, *id.* § 304A-506 (West, Westlaw through 2026 Legis. Sess.), and the B-Plus scholarship program, General Appropriations Act of 2007, No. 213, § 94, 2007 Haw. Sess. Laws 435, 485.[8]

41. Eligibility for the B-Plus scholarship program and the community college promise program is limited to Hawai‘i residents.[9] The Hawai‘i legislature directly instructed the Board to make the community college promise Program available to any student if he or she "[q]ualifies for Hawaii resident tuition." Haw. Rev. Stat. Ann. 304A-506(b)(1) (West, Westlaw through 2026 Legs. Sess.).

---

[7] Univ. of Haw., Board of Regents Policy 6.204 (eff. June 2006), https://hawaii.edu/policy/?action=viewPolicy&policySection=rp&policyChapter=6&policyNumber=204 [https://perma.cc/E2WB-4SE3].

[8] Two other scholarship programs, the Hawaii state scholars program, Haw. Rev. Stat. Ann. § 304A-504 (West 2017) (amended 2021), and the workforce development scholarship program, *id.* § 304A-505, have gone unfunded for some time.

[9] Funds for both programs are drawn from the scholarship and assistance general fund, which contains federal, state, and private funds. Haw. Rev. Stat. Ann. § 304A-2159 (West 2017).

42. The legislature did not expressly limit the B-Plus scholarship program to Hawaiʻi residents. The Board did, however, delegate authority over the program to the President of the University,[10] who in turn limited it to "bona fide Hawaiʻi resident[s] for tuition purposes."[11]

43. No statute passed after August 22, 1996, affirmatively makes illegal aliens eligible for these benefits.

## III. Hawaiʻi makes illegal aliens eligible for student loans based on residency while denying resident U.S. citizens the same without explicit statutory authorization.

44. The Hawaiʻi legislature has given the Board authority over issuing state-backed student loans to University students through the state higher education loan program. Haw. Rev. Stat. § 304A-604 (West 2017). The legislature expressly limited eligibility for loans to students "who have been residents of the State for at least one year." *Id.* § 304A-601. Board regulations likewise state that a student must "[b]e a resident of the State of Hawaii for at least one year" to receive a loan under the program. Haw. Admin. R. 20-8-4(a)(4) (LexisNexis 2026).

45. These postsecondary benefits Hawaiʻi offers to illegal aliens based on residency in Hawaiʻi are unavailable to nonresident Americans.

46. No statute passed after August 22, 1996, affirmatively makes illegal aliens eligible for these loans.

---

[10] Univ. of Haw., Board of Regents Policy 6.205 (eff. Nov. 2007), https://hawaii.edu/policy/?action=viewPolicy&policySection=rp&policyChapter=6&policyNumber=205 [https://perma.cc/6LF4-CRE7].

[11] Univ. of Haw., Executive Policy 6.206 (eff. Oct. 2014), https://www.hawaii.edu/policy/?action=viewPolicy&policySection=ep&policyChapter=6&policyNumber=206 [https://perma.cc/H8CQ-9FYK].

## CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF THE SUPREMACY CLAUSE
### (PREEMPTION OF HAR 20-4-9(g))

47. The United States hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

48. The Supremacy Clause of our Nation's Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof … shall be the supreme Law of the Land … any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Art. VI, cl. 2.

49. The preemption doctrine is derived from the Supremacy Clause. Express preemption occurs when Congress includes express language within the statute indicating its preemptive intent. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000).

50. Hawaii Administrative Rule 20-4-9(g) extends eligibility for in-state tuition benefits to illegal aliens contrary to Congress's prohibition on providing eligibility for postsecondary education benefits (lower, resident tuition rates) based on residency to illegal aliens present in the United States that are not available to all U.S. citizens regardless of residency. *See* 8 U.S.C. § 1623(a).

51. Accordingly, the challenged regulation, Hawaii Administrative Rule 20-4-9(g), is expressly preempted and unconstitutional.

### COUNT II
### VIOLATION OF THE SUPREMACY CLAUSE
### (PREEMPTION OF PROVISION OF IN-STATE TUITION TO ILLEGAL ALIENS IN VIOLATION OF 8 U.S.C. § 1621(d))

52. The United States hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

53. The University of Hawaii extends eligibility for in-state tuition to illegal aliens without a state law affirmatively providing eligibility for such benefits. *See* 8 U.S.C. § 1621(a) and (d).

54. Accordingly, the University of Hawaii's provision of such benefits to illegal aliens is preempted and unconstitutional.

**COUNT III**
**VIOLATION OF THE SUPREMACY CLAUSE**
**(PREEMPTION OF PROVISION OF FINANCIAL AID TO ILLEGAL ALIENS IN VIOLATION OF 8 U.S.C. § 1621(d))**

55. The United States hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

56. The University of Hawaii extends eligibility for financial aid to illegal aliens without a state law affirmatively providing eligibility for such benefits. *See* 8 U.S.C. § 1621(a) and (d).

57. Accordingly, the University of Hawaii's provision of such benefits to illegal aliens is preempted and unconstitutional.

**COUNT IV**
**VIOLATION OF THE SUPREMACY CLAUSE**
**(PREEMPTION OF PROVISION OF LOANS TO ILLEGAL ALIENS IN VIOLATION OF 8 U.S.C. § 1621(d))**

58. The United States hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

59. The University of Hawaii extends eligibility for loans to illegal aliens without a state law affirmatively providing eligibility for such benefits. *See* 8 U.S.C. § 1621(a) and (d).

60. Accordingly, the University of Hawaii's provision of such benefits to illegal aliens is preempted and unconstitutional.

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests the following relief:

1. That this Court enters a judgment declaring Hawaii Administrative Rule 20-4-9(g) violates the Supremacy Clause because it extends eligibility for postsecondary education benefits to illegal aliens but not nonresident U.S. citizens through State law, and is therefore unconstitutional and preempted;

2. That this Court issue a permanent injunction that prohibits Defendants as well as their successors, agents, and employees, from enforcing Hawaii Administrative Rule 20-4-9(g), or any similar subsequent statute or regulation, because it extends eligibility for postsecondary education benefits to illegal aliens but not nonresident U.S. citizens through State law;

3. That this Court issue a permanent injunction prohibiting Defendants as well as their successors, agents, and employees, from awarding in-state tuition, financial aid, and loans for postsecondary education costs to aliens who are not lawfully present in the United States and who would otherwise be ineligible for such benefits under 8 U.S.C. § 1621(d), because Hawaii has not enacted any law after August 22, 1996, affirmatively providing for such eligibility;

4. That this Court award the United States its costs and fees in this action; and

5. That this Court award any other relief it deems just and proper.

Respectfully Submitted

STANLEY E. WOODWARD, JR.
Associate Attorney General

JULIE AXELROD
ANNA EDWARDS
Counsel to the Associate Attorney General

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

HILARY K. PERKINS
Director
Enforcement and Affirmative Litigation Branch

JACQUELINE COLEMAN SNEAD
Deputy Director, Affirmative Litigation Section

*/s/_Alexander William Furtaw*
Alexander William Furtaw
Trial Attorney
United States Department of Justice
Civil Division
Enforcement and Affirmative Litigation Branch
950 Pennsylvania Ave NW
Washington, D.C. 20530
Tel: (202) 598-5667
Email: alexander.w.furtaw@usdoj.gov

*Attorneys for the United States*